56 N.Y.2d 714 (1982)
Sami I. Boulos, as Administrator of The Estate of Saad I. Boulos, Deceased, et al., Appellants,
v.
State of New York, Respondent. (Claim No. 60331.)
Court of Appeals of the State of New York.
Argued March 22, 1982.
Decided May 11, 1982.
Daniel H. Mahoney, Paul T. Kellar and Norman Kellar for appellants.
Robert Abrams, Attorney-General (Vernon Stuart and Shirley Adelson Siegel of counsel), for respondent.
Chief Judge COOKE and Judges JASEN, GABRIELLI, JONES, WACHTLER and MEYER concur; Judge FUCHSBERG dissents and votes to reverse in an opinion.
MEMORANDUM.
The order of the Appellate Division should be affirmed, with costs.
*715 Decedent was fatally injured on the afternoon of June 23, 1974, when his 1968 Oldsmobile went off a curve on Route 208 and struck several trees. Claimant, the administrator of decedent's estate, brought an action against the State for wrongful death and pain and suffering. The Court of Claims found that the State negligently constructed and maintained the highway and that this negligence was the proximate cause of the accident. The Appellate Division reversed, on the law and the facts, and dismissed the claim.
The weight of the evidence supports the determination of the Appellate Division that the roadway was not improperly constructed or maintained. Although there had been a number of prior accidents on the same section of highway, the record indicates that the bulk of these accidents were caused by such factors as excessive speed, alcohol, driver error, or tire failure.
Claimant introduced testimony by local residents that they occasionally experienced difficulty controlling their cars while negotiating the curve. In addition, claimant's expert testified that the road was not properly banked. The State, however, presented evidence to the contrary through its own expert, who had conducted extensive tests of the road before decedent's accident in response to complaints by local officials and residents. Not only was the testimony of the State's expert extensive and detailed, but claimant's expert stated on cross-examination that the difference between the actual "super-elevation" of the roadway at the point where the accident occurred and what was called for under the required construction standard was only one-quarter inch. Under the circumstances, disturbance of the determination of the Appellate Division is not warranted.
Claimant also argues that the State negligently failed to timely repair the guardrails along the curve. The guardrails were knocked down on a Friday night and decedent's automobile went through the gap on the following Sunday afternoon. Claimant, however, did not raise the absence of guardrails in his original claim and did not develop this point at trial. Indeed, plaintiff introduced no evidence as to whether repairs reasonably should have been made within that time. Thus, there was no basis for liability in this regard.
*716 FUCHSBERG, J. (dissenting).
Exercising the choice permitted between the determination in the trial court and that at the Appellate Division (NY Const, art VI, § 3, subd a; CPLR 5501, subd [b]), I would reinstate the judgment the administrator recovered on behalf of the decedent's surviving wife and children.
In doing so, I, of course, am alert to the legally necessitous circumstance that, because he was killed in the accident, the decedent, who would have been in the best position to describe the event from plaintiff's point of view, was unavailable to do so. Lest a tort-feasor who inflicts personal injury be insulated from liability simply because the injuries so produced are fatal, it is well settled that the victim's representative is not held to "`the high degree of proof required in a case where the injured person may take the stand and give his version'" (Noseworthy v City of New York, 298 N.Y. 76, 80 [DESMOND, J.]).
This sound rule in mind, I first note, as the majority concedes, that the condition of the curve in question was perilous enough to have become the focus of complaints by local residents. Even more significant, because it reflected general community concern, were the complaints by local officials.
That the deviation from maximum "super-elevation" was not mathematically large does not overcome the fact that it did not meet the State's own minimum safety standard. When, as the old saw puts it, "the straw broke the camel's back", it must have been of little comfort to the camel that it was a straw rather than a ton that wreaked the havoc. This is not pure rhetoric; it is pure law. The defendant was not to be held to any particular degree of negligence. Required only was proof of some and not all possible negligence (see, generally, Prosser, Torts [4th ed], § 34). And the burden of proving contributory negligence, if any, in such a case is always on the defendant (EPTL 5-4.2).
Moreover, the repeated prior accidents bore specific and impressive witness to how dangerous this roadway was to vehicular travelers in actual operation. That some  and only some  of these occurrences also involved additional causative factors was not a vindication of the hazard it *717 presented. It can hardly have been a coincidence that operators of these vehicles  or of vehicles of local residents which passed this point in their everyday comings and goings  would experience remarkable difficulty in controlling their cars on this curve of the road.
In short, I am persuaded that the decision of Court of Claims Judge EDWARD M. MURRAY, who, as Trial Judge, had the further advantage of seeing and hearing the conflicting expert witnesses, is most closely in accord with what is revealed by a most searching and insightful survey of the record.
Order affirmed, with costs, in a memorandum.